# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BISSAU MENDY, et al, | CIVIL ACTION – LAW |
| Plaintiffs, | |
| vs. | NO. 1:22-CV-535-KM |
| BOXREC, et al, | |
| Defendants | ELECTRONICALLY FILED |

## REPLY BRIEF OF THE ASSOCIATION OF BOXING COMMISSIONS IN SUPPORT OF MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

### Introduction and Procedural Statement

On Saturday, October 29, Plaintiff, Edward Mendy, filed his Memorandum in Opposition to Motion to Dismiss Filed by The Association of Boxing Commissions. (Doc. 44). Defendant, Association of Boxing Commissions ("ABC") had filed its Brief in Support of its Motion to Dismiss Complaint or, in the Alternative, for More Definite Statement on October 3, 2022. (Doc. 37). Therefore, Mendy's brief was due no later than October 17, pursuant to Local Rule 7.6. Despite this, he sought no extension but simply filed his response nearly two

41C1834.2

weeks after it was due.[1] As the United States District Court for New Jersey noted regarding Mr. Mendy in *Mendy v. Home Depot USA, Inc.* 2021 WL 2821181, Lexis 1921126084:

> .... I point out that Mr. Mendy is no ordinary pro se litigant. He holds a law degree and was formerly a member of the Louisiana Bar. Hence he will receive no special consideration here.[2]

ABC submits there are no special rules for Mr. Mendy. His late filing, without having sought consent of either Court or counsel, should be disregarded.[3]

Further, according to the docket, there appears to have been no service made on Defendants Samson Lou, Round 10 Boxing, Dubai Boxing Commission, Ahmed Seddiqi, Jose Mohan, MTK Global, and Daniel Kinahan.[4]

However, should the Court choose not to disregard Mendy's Memorandum, ABC briefly responds to it as follows.

---

[1] Only Mendy has filed an opposition, albeit out of time, to ABC's Motion to Dismiss (the "Motion') (Doc. 30). The other Plaintiffs have not. Under Local Rule 7.6, any party who fails to file a timely response shall be deemed not to oppose such motion.

[2] A copy of this case was submitted with ABC's initial Brief.

[3] Mendy's Memorandum also exceeds the 15 page limitation of Local Rule 7.8, but contains no table of contents or table of citations, in violation of Local Rule 7.8(a). No application was made to file an overlength brief, in violation of Local Rule 7.8(b).

[4] The Court made note of this during the status conference held on September 22.

## ABC'S Motion is Made Under  FRCP 12 (b) (6). It is not a Motion for Summary Judgement

Mendy claims that ABC's Motion to Dismiss is actually one for summary judgement. (Pb at 7-10).[5] He asserts that "Defendants appended to their motion to dismiss two affidavits . . ." (Pb at 8). However, this assertion is incorrect. No affidavits were submitted in connection with the Motion to Dismiss. Declarations were filed in connection with Mendy's Motion to Strike and ABC's request for status conference, heard by the Court on September 22. No declarations were filed in connection with the Rule 12(b)(6) Motion.

Mendy is perfectly able to access the docket and review the filings made on October 3, 2022. He should not be wasting the Court's time with a frivolous and factually incorrect argument.

## Mendy Acknowledges He Has No Claim Under the Muhammad Ali Act

In his Memorandum, Mendy admits he has no claim under the Boxing Acts. (Pb 12). Therefore, those claims must be dismissed.

---

[5] "Pb" notations shall  be references to Mendy's "Memorandum in Opposition of Motion to Dismiss Filed by The Association of Boxing Commissions".

**Mendy Has Not Addressed the Elements Necessary to Bring an Antitrust Claim**

ABC spent nine pages explaining why, under applicable caselaw, the Complaint does not state a cause of action against it under antitrust law. Mendy spends only one page unsuccessfully attempting to refute ABC's arguments.

First, as ABC points out in its initial Brief, Mendy is neither a competitor of ABC nor a consumer of a product made or marketed by ABC.

The Third Circuit has instructed that:

> Generally, antitrust injury – that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' act unlawful," Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc. 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977) "is limited to consumers and competitors in the restrained market and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 102 (3d Cir. 2010).

Ethypharm S.A. Fr. v. Abbott Labs, 707 F.3d 223, 232 (3d. Cir. 2013).

Though Defendant BoxRec is alleged to create a product, ABC is not alleged to have done so. Thus, Plaintiff did not and cannot allege that he is a consumer of any product or service created by ABC.

The role of ABC is defined by the Boxing Acts and is limited to certifying applicants to be boxing registries. As pointed out in ABC's initial Brief, the term

4

"Boxer registry" means "any entity certified by the Association of Boxing Commissions for the purposes of maintaining records and identification of boxers." 15 U.S.C. § 6301(3). Nothing in the Act prohibits more than one entity from applying to be a registry and there is no allegation, nor can there be, that ABC would not consider and, if qualified, "certify" another entity if one applies.

Thus, the role of the ABC is limited indeed.

Mendy does not allege that he attempted to form a boxing registry or applied to ABC for certification. Hence his complaint is with BoxRec, and not with ABC.

It must be noted that specificity is required in antitrust complaints, particularly where a conspiracy is alleged. "It is a longstanding rule in the Third Circuit that a mere general allegation of conspiracy is insufficient. A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient." Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1400 (D. Del. 1984) aff'd, 768 F.2d 152 (3d Cir. 1985) (internal citations omitted). "The plaintiffs must plead with particularity the 'circumstances' of the alleged wrongdoing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain

actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." Id. at 1402. (internal citations omitted).

The Complaint asserts nothing more than mere conclusory statements alleging a conspiracy that ABC had the ability to control the inclusion of "boxing events" outside the United States by BoxRec, belied by the minimal authority given ABC by the Ali Act, which limits the definition of boxing events to those held in the United States (see above). In fact, the Complaint alleges that "Plaintiff Mendy has had meetings with and spoken to at least two people with direct knowledge of Defendant's conspiracy to suppress the Event results and the fact that MTK Global, Round 10 Boxing, Seddiqi, Mohan and their affiliates were solely responsible for soliciting and convincing BoxRec, Sheppard, M. Sheppard and/or Lu to not list the Event or record its results." (Doc. 1, ¶ 219). ABC is not even mentioned.

Antitrust claims require a specificity of pleading totally lacking here. The relevant market is not specified, and there is no allegation that ABC has done anything more than fulfill a Congressional mandate. Thus, Plaintiff Mendy cannot and does not allege (1) the possession of monopoly power in the relevant market and (2) *the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business*

*acumen, or historic accident*." <u>United States v. Grinnell Corp.</u>, 384 US 563, 570-71 (1966) (emphasis added); *see also* <u>Ideal Dairy Farms, Inc. v. John Labatt, Ltd.</u> 90 F.3d 737, 749 (3d Cir. 1996); <u>Bonjorno v. Kaiser Aluminum & Chemical Corp.</u>, 752 F.2d. 802, 808 (3d Cir. 1984). Certification is a Congressional mandate and that is all.

## Mendy Has Abandoned Numerous Claims

At page 14 of  his Memorandum, Mendy has abandoned certain claims against ABC, including claims for libel, slander and unfair trade practices.

He does not fully abandon but makes no substantive response as to  claims for "Tortious Conduct", simply stating that  the claim is "for the court to decide." This is the equivalent of offering no defense to the legal analysis in ABC's initial Brief, and ABC respectfully submits that the Court should rule in favor of ABC on these claims for the reasons set forth in ABC's initial Brief.

## Mendy Has Submitted No Reasoned Analysis as to Why the Conspiracy Count Does Not Fail

Regarding the Conspiracy Count, Mendy states, without any legal citation, that "this is an issue of law for the Court to decide." However, a plaintiff bringing a civil conspiracy claim is required to assert "material facts which will either directly or inferentially establish elements of conspiracy." <u>Weaver v. Franklin</u>

County, 918 A.2d 194, 202 (Pa. Cmwlth. 2007). Proof of malice, i.e. an intent to injure, is an essential part of part of a conspiracy cause of action. The unlawful intent must be without justification. Reading Radio, Inc. v Fink, 833 A.2d 199, 212 (Pa. Super. 2003). Even by incorporating the Complaint's 422 paragraphs prior to the Tenth Claim, there is no allegation of any intent by ABC to injure any Plaintiff. The basic claim is that ABC failed to require BoxRec to record certain bouts unmistakably outside of ABC's jurisdiction. This allegation does not demonstrate an "intent to injure."

The elements of civil conspiracy in Pennsylvania are (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage. Philips v. Selig, 959 A.2d 420 (Pa. Super. 2008), citing Goldstein v. Phillip Morris, Inc. 854 A.2d 585, 590 (Pa. Super. 2004). No overt act has been alleged against ABC. The allegation against ABC is that it did not in some fashion force BoxRec to record certain bouts held outside the United States and ABC's jurisdiction. This is not an overt act.

Thus, the Civil Conspiracy claims must fail.

8

**The Discrimination Claim Must Fail**

Mendy's Memorandum references certain paragraphs in the Complaint regarding the purported discrimination claim. At Paragraph 428 he alleges he is Black and of African origin. At paragraph 430 he alleges that there is no other explanation for "several Defendant entity's actions." He claims that the reporting requirements imposed by BoxRec are more stringent than those of other parts of the world and claims that this is "condoned" by ABC. (Paragraph 433). He does not claim that that ABC is in any way directly involved in the promulgation of BoxRec's reporting criteria. He does not claim that any reporting criteria which BoxRec may have is directed at him personally. He does not claim that any officer of ABC had direct contact with him or knew that he was Black. He seems to ignore the fact that many countries in Africa, particularly northern Africa, are not populated primarily by Blacks, and that South Africa is a mixed-race country.

Further, the Complaint contains no statutory basis for Mendy's discrimination claim. This claim does not fall under Federal statutory workplace, housing, or public accommodation prohibitions. See, e.g. Title VII. It does not fall under the Pennsylvania Human Relations Act.[6] Using the word "discrimination"

---

[6] Act of October 27, 1955, P.L. 744, as amended, 43 P. S. § 951-963.

does not in and of itself create a cause of action. A legal underpinning must be shown that is completely lacking in the Complaint.

**The Response by Mendy Does Not Remedy the Deficiencies of the Complaint**

ABC notes the following statement from Mendy's brief: "As a preliminary matter, while the obvious racketeering entities are MTK, Global, and the Kinahan Cartel, RICO claims encompass the ABC." (Pb at 16). However, the RICO statute requires allegations of two discrete predicate acts. In that regard, "racketeering activity" is defined in the RICO statute as:

> (A)   any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465

(relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1]section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical

weapons), section <u>831</u> (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section <u>501(c)</u> (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section <u>157</u> of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section <u>2332b(g)(5)(B)</u>;

18 U.S.C. § 1961(1)

None of these are alleged against ABC, as pointed out at Page 24 of its initial Brief (without the extensive statutory quotation above). See <u>Lum v. Bank of Am</u>. 361 F. 3d. 217, 223 (3d Cir. 2004) (a case in which general, non-specific allegations of fraud were deemed insufficient to support a RICO Count).

ABC also notes that it did not cause any damages alleged by Mendy. He complains that BoxRec, **not ABC**, failed to list a bout occurring in Africa in which he was allegedly the promoter for Mr. Denes. RICO plaintiffs must make a threshold showing that their injuries were proximately caused by the defendants'

12

alleged racketeering activity. <u>Anza v. Ideal Steel Supply Corp</u>. 547 U.S. 451, 453 (1991). ABC will not opine whether Mendy can show damages caused by BoxRec, but he certainly cannot do so as to ABC which, has no statutory role at all in the listing of bouts outside the United States.

There are additional deficiencies in Mendy's RICO Counts which are unaddressed in his Memorandum, and ABC will rest on its initial Brief with regard to those deficiencies rather than further burden the Court.

## CONCLUSION

It is obvious  that Mendy is the mastermind behind this lawsuit. It is equally obvious that he brought the action not because ABC has done anything wrong, but because he desires ABC to somehow cause BoxRec to change its reporting policies on bouts outside the United States, something ABC has no power to do.

A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". Claims must be more than conceivable, they must be plausible. <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007). <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678  (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Ashcroft v. Iqbal , 490 F. 3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n] that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Mendy's rambling and frankly paranoid[7] Complaint fails and, it is respectfully submitted, must be dismissed.

Respectfully submitted,

DINES AND ENGLISH, LLC

BY:   /S/PATRICK C. ENGLISH, ESQUIRE
PATRICK C. ENGLISH, ESQUIRE
685 Van Houten Avenue
Clifton, NJ 07013
Ph:  973-778-7575
dinesandenglish@aol.com
*Specially admitted pro hac vice*

---

[7] A paranoia  manifested during the September 22 status conference when Mr. Mendy justified his use of a bogus address by his alleged fear of harm.

ROSENN, JENKINS & GREENWALD, LLP

ROBERT N. GAWLAS, JR., ESQUIRE
Attorney I.D. No. 46608
ROBERT L. GAWLAS, ESQUIRE
Attorney I.D. No. 323299
Cross Creek Pointe
1065 Highway 315, Suite 200
Wilkes-Barre, PA  18702
rgawlas@rjglaw.com
rlgawlas@rjglaw.com
Attorneys for Defendant,

ASSOCIATION OF BOXING
COMMISSIONS, INC.

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BISSAU MENDY, et al, <br> Plaintiffs, | CIVIL ACTION - LAW |
| vs. | NO. 1:22-CV-535-KM |
| BOXREC, et al, <br> Defendants | ELECTRONICALLY FILED |

### <u>CERTIFICATE OF SERVICE</u>

I, PATRICK C. ENGLISH, ESQUIRE, hereby certify that on the 3rd day of November, 2022, I caused to be served a true and correct copy of the foregoing REPLY BRIEF OF THE ASSOCIATION OF BOXING COMMISSIONS IN SUPPORT OF MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT, by ECF to all counsel and parties of record.

DINES AND ENGLISH, LLC

BY: <u>/S/PATRICK C. ENGLISH, ESQUIRE</u>
PATRICK C. ENGLISH, ESQUIRE

41C4301