**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BISSAU MENDY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 1:22-CV-00535 |
| v. | (KANE, J.) |
| BOXREC, et al., | (MEHALCHICK, M.J.) |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Presently before the Court is a motion to dismiss for lack of personal jurisdiction and

failure to state a claim filed by Defendants BoxRec Limited ("BoxRec"), John Sheppard, and

Marina Sheppard (collectively, "BoxRec Defendants"), and a motion to dismiss for failure to

state a claim, or, in the alternative, motion for a definitive statement filed by the Association

of Boxing Commissions ("ABC"). (Doc 28; Doc. 30). Also pending before the Court is a

motion to strike ABC's motion for pretrial conference with the Court to establish status and

bona fides of Plaintiffs,[1] and a motion for extension of time to file a response to BoxRec

Defendants' motion to dismiss, filed by Plaintiff Edward Bissau Mendy ("Mendy").[2] (Doc.

---

[1] On September 13, 2022, Mendy filed a motion to strike ABC's motion for pretrial conference. (Doc. 25). In relevant part, ABC fled a motion for pretrial conference with the Court to establish status and bona fides of Plaintiffs on September 9, 2022, which the Court granted on September 12, 2022. (Doc. 20; Doc. 22). On September 22, 2022, the parties appeared before the Court for a pretrial conference. (Doc. 34). Accordingly, Mendy's motion to strike should be **DENIED as MOOT**. (Doc. 25).

[2] On October 3, 2022, Mendy filed a motion for an extension of time to file a response to BoxRec Defendants' motion to dismiss. (Doc. 36). On October 5, 2022, BoxRec Defendants filed a brief in opposition to Plaintiffs' motion for an extension of time. (Doc. 38). On October 6, 2022, Mendy filed briefs in opposition to BoxRec Defendants' motion to dismiss with corresponding exhibits. (Doc. 39; Doc. 39-1; Doc. 40; Doc. 40-1). Accordingly, Mendy's motion for an extension of time to file a response to Boxrex Defendants' motion to dismiss should be **DENIED as MOOT**. (Doc. 36).

25; Doc. 36). On April 12, 2022, *pro se* Plaintiffs Mendy, Brendon Denes ("Denes"), Ivana Habazin ("Habazin"), and Charles Muniz ("Muniz") (collectively, "Plaintiffs") initiated this action by filing a complaint against Defendants BoxRec, John Sheppard, Marina Sheppard, Samson Lu ("Lu"), the ABC, Round 10 Boxing, Dubai Boxing Commission, Ahmed Seddiqi, Jose Mohan, MTK Global, Daniel Kinahan, and Does 1 through 20 (collectively, "Defendants"). (Doc. 1). In the complaint, Plaintiffs assert claims under the Professional Boxing Safety Act of 1966 and the Muhammed Ali Boxing Reform Act (collectively, "U.S. Boxing Acts"), the Sherman Act, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), as well as various state law claims. (Doc. 1).

For the following reasons, it is respectfully recommended that Defendants' motions to dismiss be **GRANTED** and Mendy's motion to strike be **DENIED** as moot.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On April 12, 2022, Plaintiffs initiated this instant action by filing a complaint against Defendants, asserting claims under the U.S. Boxing Acts, the Sherman Act, the RICO Act, as well as various state law claims. (Doc. 1). The allegations in the complaint stem from three boxing matches that allegedly took place in Dubai on April 10, 2021, in Zimbabwe on December 11, 2021, and in Rio De Janeiro, Brazil on February 5, 2022. (Doc. 1, ¶¶ 28-29, 70, 89). Plaintiffs allege these fights were not recorded in violation of the U.S. Boxing Acts and that Defendants conspired to suppress the recording of these events to harm Mendy and his boxing promotional business, Lion Heart Boxing Productions ("LHPB"). (Doc. 1, ¶ 8, 26). Plaintiffs further allege that ABC appointed BoxRec as the sole boxing register and thereafter, entered into an agreement to exclusively report fights by member organizations of ABC to monopolize the registering and reporting of boxing fights in the United States in violation of

the Sherman Act. (Doc. 1, ¶¶ 261, 326-344). Based on these allegations, Plaintiffs also bring federal claims pursuant to the RICO Act, alleging that Defendants are part of a "widespread criminal enterprise engaged in a pattering of racketeering activity" to suppress Plaintiff Mendy and his company, LHBP. (Doc. 1, ¶¶ 439-442). Plaintiffs allege twelve counts in the complaint: Count I asserts a claim under the U.S. Boxing Acts against BoxRec and ABC; Count II asserts a claim for "conspiring to violate" the U.S. Boxing Acts against all Defendants; Counts III, IV, V, and VI assert claims under 15 U.S.C. § 2 of the Sherman Act against ABC and BoxRec; Count VII asserts a claim for libel and slander; Count VIII asserts a claim for tortious conduct; Count IX asserts a claim for unfair business practices; count X asserts a claim for civil conspiracy; and Count XI asserts a claim for discrimination and count XII asserts a claim for "Civil RICO." (Doc. 1, ¶¶ 138-537).

On September 9, 2022, ABC moved for a conference to establish status and bona fides of Plaintiffs. (Doc. 20). On September 12, 2022, the Court granted ABC's motion for a pre-trial conference (Doc. 22), and a pre-trial conference was held on September 22, 2022. (Doc. 34). On September 13, 2022, Mendy moved to strike ABC's motion for pretrial conference as moot. (Doc. 25). On September 16, 2022, BoxRec Defendants filed a motion to dismiss Plaintiffs' complaint as well as a brief in support. (Doc. 28; Doc. 29). On September 19, 2022, ABC Defendants filed a motion to dismiss the complaint, or in the alternative, a motion for a more definite statement as well as a declaration. (Doc. 30; Doc. 31).

The motions have been fully briefed and are now ripe for disposition. (Doc. 25; Doc. 28; Doc. 29; Doc. 30; Doc. 32; Doc. 33; Doc. 36; Doc. 37; Doc. 38; Doc. 39; Doc. 40; Doc. 41; Doc. 43; Doc. 44; Doc. 45; Doc. 46).

## II.   LEGAL STANDARDS

### A.   FED. R. CIV. P. 12(B)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When raised as a jurisdictional defense, the plaintiff bears the burden of establishing the Court's personal jurisdiction over the moving defendant. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Without holding an evidentiary hearing, the plaintiff meets this burden by establishing a prima facie case of personal jurisdiction, or "by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n.*, 819 F.2d 434 (3d Cir. 1987)); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the Court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). "Once these allegations are contradicted by an opposing affidavit, however, [the] plaintiff must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 595 (M.D. Pa. 2009). Indeed, the plaintiff will not be able to rely on the bare pleadings alone, and "must respond with actual proofs, not mere allegations." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d at 595; *Patterson ex rel. Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

Courts may look beyond the pleadings when ruling on a motion brought under Rule 12(b)(2). *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d at 595. "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson*, 893 F.2d at 603 (quoting *Time Share Vacation Club*, 735 F.2d at 67 n. 9). Thus, "[c]onsideration of affidavits submitted by the parties is appropriate and, typically, necessary." I*n re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d at 595. Further, "the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence." *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 476 (3d Cir. 2011).

B.  FED. R. CIV. P. 12(B)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff

- 5 -

must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions . . .'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

C. **FED. R. CIV. P. 12(E)**

Rule 12(e) of the Federal Rules of Civil Procedure authorizes a defendant to move "for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The motion must ... point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Rule 10(a) requires, among other things, that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A motion for a more definite statement is one tool by which a defendant may seek to remedy alleged deficiencies under Rule 10. *See, e.g.*, *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).

However, "[a] motion for a more definite statement is not a substitute for the discovery process[,]" and that such motions are not favored. *Wheeler v. United States Postal Service*, 120 F.R.D. 487, 488 (M.D. Pa. 1987). Such motions are typically only granted where pleadings are "unintelligible or if it is virtually impossible for the opposing party to craft a responsive

pleading." *Maya v. Chertok*, No. 1:15-CV-00484, 2015 WL 5254377, at \*2 (M.D. Pa. Sept. 9, 2015) (quoting *Morris v. Kesserling*, No. 1:9-CV-1739, 2010 WL 4362630, at \*1 (M.D. Pa. Oct. 27, 2010) (quotations omitted)); *see Schaedler v. Reading Eagle Publ'n*, 370 F.2d 795, 798 (3d Cir. 1966) (such motions are "directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading"). The opposing party must be unable to respond, "even with a simple denial[ ] in good faith or without prejudice to himself." *Brueggman v. Fayette Cty*, No. 95-CV-446, 1995 WL 606796, at \*4 (W.D. Pa. Aug. 17, 1995); *see Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 11-CV-4568, 2011 WL 6046923, at \*3 (E.D. Pa. Dec. 6, 2011) ("a motion for a more definitive statement is generally . . . used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail").

### III.  DISCUSSION

#### A.  BOXREC DEFENDANTS' MOTION TO DISMISS

BoxRec Defendants move to dismiss all claims with prejudice as to BoxRec and its directors, John and Marina Sheppard, because the Court lacks personal jurisdiction over BoxRec, a limited company in the United Kingdom, and its directors, John and Mariana Sheppard, who are foreign citizens. (Doc. 29, at 19). Alternatively, BoxRec Defendants argue that: (1) all claims under the U.S. Boxing Acts fail to state a claim as a matter of law because Plaintiffs lack standing since the acts only apply to fights on U.S. soil, and the Acts do not impose any requirements on certified boxing registrars; (2) Plaintiffs do not have anti-trust standing to assert claims under the Sherman Act, and even if they did, BoxRec does not have any monopoly power and Plaintiffs have not stated a plausible antitrust claim; (3) Plaintiffs do not have standing to assert RICO claims, and even if they did, the RICO claims fail to

state a claim upon which relief may be granted; (4) supplemental jurisdiction should not be exercised over the remaining state law claims which also fail to state a claim upon which relief can be granted; and (5) to the extent any viable claim remains, the Court should strike scandalous and impertinent allegations comparing BoxRec to the Gestapo and related outlandish claims. (Doc. 29, at 25-46).

In the complaint, Plaintiffs allege that BoxRec "provides its services worldwide, including this District." (Doc. 1, ¶ 27a). Further, Plaintiffs allege that the Court has jurisdiction over BoxRec based on its participation in a conspiracy. (Doc. 1, ¶ 21). BoxRec Defendants move to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(2), arguing that this Court lacks both general and specific jurisdiction over BoxRec, a limited company organized under the laws of the United Kingdom where it has its principal place of business, and its directors, John and Marina Sheppard, who are foreign citizens. (Doc. 29, at 19). In support of its assertions, BoxRec Defendants have proffered the Declaration of John Sheppard and Marina Sheppard. (Doc. 28-1; Doc. 28-2).

A district court deciding a challenge to its jurisdiction over a defendant has discretion to either hold an evidentiary hearing on the motion or to decide it based on the parties' submission. *Miller Yacht Sales*, 384 F.3d at 97 (considering a district court's ruling on a 12(b)(2) motion without holding an evidentiary hearing); *Doe v. Hesketh*, 15 F.Supp.3d 586, 591 (E.D. Pa. 2014) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2013) ("A district court considering a challenge to its jurisdiction over a defendant has 'considerable leeway in choosing a methodology for deciding the motion.'")). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants . . . . [W]hen the court does

not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). While the Court held a hearing in this case, it was non-evidentiary and thus, the Court requires only a *prima facie* showing of jurisdiction to defeat the motion.

A defendant's contacts with a forum must be sufficient to create either general or specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction requires that a defendant's "affiliations with the State [be] 'so continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citations omitted). To establish specific jurisdiction, a plaintiff must demonstrate the following: (1) that a defendant has "purposefully directed [its] activities' at the forum"; (2) that the claim " 'arise[s] out of or relate[s] to' at least one of those activities"; and (3) that the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.' " *O'Connor*, 496 F.3d at 317 (citations omitted).

Regarding general jurisdiction, BoxRec Defendants argue that the Court lacks personal jurisdiction because (1) BoxRec is a limited company organized under the laws of the United Kingdom where it has its principal place of business; (2) John Sheppard is a citizen of the United Kingdom; (3) Mariana Sheppard is a citizen of Germany and resides in the United Kingdom; and (4) the Sheppards never resided in the United States, much less Pennsylvania. (Doc. 29, at 23-25). Conversely, Mendy contends "BoxRec may be a United

Kingdom company but it is at home in this District," arguing that BoxRec has robust operations in the United States and that the majority of BoxRec's revenues are derived from BoxRec's contract with the ABC, a company that resides in the Middle District of Pennsylvania (the "ABC Contract"). (Doc. 39, at 4). Mendy asserts that the Court has general jurisdiction over John and Mariana Sheppard because as alter-egos of BoxRec. (Doc. 39, at 2-3).

The undersigned finds that the Court lacks general jurisdiction over the BoxRec Defendants. Plaintiffs do not set forth allegations or evidence which establish a *prima facie* case that BoxRec is incorporated in Pennsylvania or has its principal place of business in Pennsylvania, or that any Defendant has systematic and continuous contacts with this forum. It is clear that BoxRec is a foreign-county corporation, organized under the laws of the United Kingdom with its principal place of business there. (Doc. 29, at 23); *see BNSF Ry. Co.*, 581 U.S. at 413 ("corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business."). Further, it is clear that John and Mariana Sheppard are foreign citizens domiciled in the United Kingdom. (Doc. 29, at 24-25); *see Daimler*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . "). As such, there is no basis in the present matter to conclude that BoxRec is "at home" in the Middle District of Pennsylvania or that John and Mariana Sheppard reside in this forum. Accordingly, the undersigned concludes that the Court does not have general jurisdiction over BoxRec Defendants.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp.v. Consolidated Fiber Glass Prod. Inc.*,

75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct casual connection than that provided by the but-for test." *O'Connor*, 496 F.3d at 317. However, the required casual connection is looser than the tort concept of proximate causation. *O'Connor*, 496 F.3d at 317 (citing *Miller Yacht Sales*, 384 F.3d at 99-100). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" – whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *O'Connor*, 496 F.3d at 323.

Mendy argues that the Court has specific jurisdiction over BoxRec as a result of its actions in relation to the boxing match in Brazil, in which the Kansas Athletic Commission was solicited to approve the event, but BoxRec refused to register the event. (Doc. 39, at 5). Mendy asserts that, as alter-egos of BoxRec, John and Mariana Sheppard "acted ultra vires in the negotiation of the ABC Contract and engaged in various ultra vires acts that could not have been authorized by BoxRec or its charter." (Doc. 39, at 2-3).

Construing the alleged facts in the light most favorable to Plaintiffs, the undersigned finds that Plaintiffs have not set forth any allegations and/or evidence to establish the Court has general

jurisdiction over BoxRec Defendants. BoxRec's services as a boxing registrar under the U.S. Boxing Acts are rendered from the United Kingdom and the events giving rise to this action took place in Dubai, Zimbabwe, and Brazil. (Doc. 1, ¶¶ 28-29, 70, 89); *see Rehman v. Etihad Airways*, No. 3:19-CV-00653, 2019 WL 12095414, at *8 (M.D. Pa. Nov. 14, 2019), *report and recommendation adopted*, No. CV 3:19-653, 2021 WL 780302 (M.D. Pa. Mar. 1, 2021) (concluding Court did not have specific jurisdiction over defendant because none of plaintiffs' claims arise out of actions that defendant performed in Pennsylvania). BoxRec has no operations in Pennsylvania, no employees, no bank accounts, owns no real estate, does no business, and in no way invokes Pennsylvania laws. (Doc. 29, at 23). As for Pennsylvania contacts, BoxRec Defendants represent that BoxRec issues $10 invoices for ABC registration fees by email for services rendered from the United Kingdom to eight Pennsylvania promoters, and the limited revenue BoxRec receives from the $10 invoices represents less than 1% of BoxRec's total revenue for each year since 2019. (Doc. 28-1, ¶¶ 24-26; Doc. 28-2, ¶¶ 24-26; Doc. 29, at 3). The ABC Contract was not entered into, negotiated in, or governed by Pennsylvania law, and there are no forum-related activities of the Sheppards. (Doc. 29, at 23-24). Finally, BoxRec has submitted affidavits asserting that it maintains its boxing database from the United Kingdom, no communication has occurred between BoxRec and Plaintiffs in Pennsylvania, and BoxRec did not purposefully direct its activities to Pennsylvania residents. (Doc. 28-1, ¶¶ 14, 23, 26, 29-32; Doc. 28-2, ¶¶ 14, 23, 26, 29-32). Moreover, there is no allegation or evidence that the Sheppards had any contact with Pennsylvania. (Doc. 1). Under those circumstances, Plaintiffs' claims against the Sheppards do not "stem from a constitutionally cognizable contact" by the Sheppards with Pennsylvania. *World–Wide Volkswagen*, 444 U.S. at 299. Plaintiffs' allegations do not sufficiently establish that BoxRec

Defendants' purposeful activities were specifically directed at Pennsylvania. *See D'Jamoos*, 566 F.3d at 103 (explaining that the court could not link the events at issue in that case "to [defendant's] deliberate activities aimed at Pennsylvania."). As such, the Court finds that Plaintiffs have not met their burden of setting forth a prima facie case that BoxRec Defendants purposefully directed its activities at this forum. Therefore, the undersigned finds that, in the present action, it does not have personal jurisdiction over any BoxRec Defendant.[3]

Accordingly, it is respectfully recommended that BoxRec Defendants' motion to dismiss be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(2).

B. ABC'S MOTION TO DISMISS [4]

In its motion to dismiss, ABC moves to dismiss all claims as to ABC for the following reasons: (1) all claims under the U.S. Boxing Acts fail because the non-boxer Plaintiffs lack standing, and the U.S. Boxing Acts apply only to fights on U.S. soil and impose no obligations on ABE to regulate the reporting of foreign boxing matches; (2) Plaintiffs have no standing to assert claims under the Sherman Act and, even if they did, ABC has no monopoly power and Plaintiffs have not stated a plausible anti-trust claim; (3) Plaintiffs have no standing to assert RICO claims and, even if they did, they fail to state a claim upon which relief can be granted for a number of reasons, including that ABC is not alleged to have engaged in necessary

---

[3] Having determined that Plaintiffs have not sufficiently demonstrated personal jurisdiction over this claim, the undersigned need not consider BoxRec Defendants' alternative grounds for dismissal argued in the instant motion. (Doc. 29); *see Flood v. Braaten*, 727 F.2d 303, 306 n.12 (3d. Cir. 1984) (explaining that if a court lacks personal jurisdiction over a party, it lacks power to adjudicate the dispute).

[4] Mendy claims that ABC's motion to dismiss is actually a motion for summary judgment, arguing that Defendants appended to their Rule 12(b)(6) motions two affidavits as well as exhibits. (Doc. 44, at 6-7). However, no affidavits or exhibits were filed by ABC Defendants in connection with their Rule 12(b)(6) motion. (Doc. 30; Doc. 37). As such, the undersigned will treat ABC Defendants' motion to dismiss as a Rule 12(b)(6) motion.

predicate acts; and (4) supplemental jurisdiction should not be exercised over the remaining state law claims because they also fail to state a claim upon which relief can be granted, diversity jurisdiction has not been asserted, and the claims have no merit as to ABC.[5] (Doc. 30; Doc. 37, at 9-10).

### 1. Plaintiffs' U.S. Boxing Act claims fail.

In Counts I and II of the complaint, Plaintiffs assert that "the ABC has been a positive force in boxing and has been responsible for removing a lot of the shenanigans in the sport, removing boxer fraud, standardizing rules, and implementing practical solutions based on the [U.S. Boxing Acts]." (Doc. 1, ¶¶ 152-257). In paragraph 248 of the complaint, Plaintiffs make the conclusory allegation that the actions of ABC are a violation of the U.S. Boxing Acts. (Doc. 1, ¶ 248). Closely reading Plaintiffs' complaint, and construing the complaint liberally in favor of Plaintiffs, the undersigned finds that Plaintiffs do not assert claims under either of the Boxing Acts. (Doc. 1, ¶¶ 138-246). Notably, the complaint does not allege any specific provision of either Act or attempt to flesh out any alleged injury with well-pleaded factual allegations in connection to these Acts. (Doc. 1, ¶¶ 138-246). In response to ABC's motion to dismiss, Mendy clarifies that Plaintiffs do not seek any relief under the U.S. Boxing Acts and concedes that he does not have standing to bring a claim. (Doc. 44, at 12). Rather, Mendy asserts that the U.S. Boxing Acts are relevant to his claims in that ABC's violations amplify his claims under the Antitrust Act, the RICO Act, and state law. (Doc. 44, at 12-13).

---

[5] In opposition to ABC's motion to dismiss, Mendy clarifies that he does not seek to assert any claims regarding libel, slander, or unfair trade practices against the ABC. (Doc. 44, at 14). Accordingly, to the extent that the complaint attempts to allege claims for libel, slander, and unfair trade practices against ABC, such claims have been abandoned and are DISMISSED. (Doc. 1).

Therefore, the undersigned recommends that the Court dismiss Plaintiffs' claims under the U.S. Boxing Acts brought against ABC.

In the exercise of extreme caution, the undersigned further finds that any claims under the U.S. Boxing Acts fail as a matter of law. The Ali Act creates a private right of action for a boxer who has suffered economic injury as a result of a violation of the Ali Act. 15 U.S.C. § 6309(d). However, the U.S. Boxing Acts do not apply to bouts taking place outside the United States. In this regard, the Eastern District of Pennsylvania explained, in relevant part:

> 15 U.S.C. § 6301 defines the terms for the Muhammad Ali Act. Section 6301(8) defines "[p]rofessional boxing match" as "a boxing contest held in the United States between individuals for financial compensation." This clearly suggests that Congress' use of the term "boxing match" in § 6307e(b) was meant to apply only to those matches taking place within the United States. The Plaintiff argues that Congress' use of the term "boxing match" as opposed to "[p]rofessional boxing match," the moniker used in the definition section, suggests an alternate meaning. This Court cannot agree. Upon close examination it is evident that Congress used the terms "boxing match" and "professional boxing match" interchangeably. Prior to being replaced, the old § 6307 read, "[n]ot later than 48 business hours after the conclusion of a professional boxing match, the supervising boxing commission shall report the results of such boxing match . . . ." Congress' use of the terms interchangeably in the original text arguably demonstrates the intent of the legislature when adopting this legislation. Despite using the term "boxing match," as opposed to "professional boxing match," Congress intended § 6307e to apply only to those matches, specified by Congress, which occur within the United States. *Echols v. Pelullo & Banner Promotions, Inc.*, No. CIV.A. 03-1758, 2003 WL 21340274, at *2 (E.D. Pa. June 4, 2003).

Here, all of Plaintiffs' claims concern boxing matches which took place outside of the United States in Dubai, Zimbabwe, and Brazil. (Doc. 1, ¶¶ 28-29, 70, 89). Therefore, Plaintiffs' claim against ABC brought under the U.S. Boxing Acts fails to state a claim upon which relief may be granted.

Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs claims in Counts I and II against ABC be DISMISSED.

### 2.  Plaintiffs' Sherman Act claims fail.

In Counts III, IV, V, and VI of the complaint, Plaintiffs assert violations of the Sherman Act, 15 U.S.C. § 2, for unlawful monopolization, attempted monopolization, and conspiracy to monopolize. (Doc. 1, ¶¶ 258-384).

ABC moves to dismiss Plaintiffs' antitrust claims, arguing Plaintiffs: (1) have not alleged antitrust injury and therefore, lack standing to pursue their Sherman Act claim; (2) have not plausibly alleged that ABC had specific, egregious conduct that evinced a predatory and specific intent to monopolize; (3) have not plausibly defined the relevant market; (4) have not plausibly alleged that ABC willfully acquired or maintains monopoly power; (5) have not plausibly alleged that ABC has a dangerous probability of achieving a monopoly on a properly-defined market; (6) have not sufficiently alleged that ABC has participated in a conspiracy to monopolize; and (7) are not entitled to injunctive relief under Section 16 of the Clayton Act, as Plaintiffs have failed to make out a colorable claim for monopolization. (Doc. 37, at 21-30). In opposition, Mendy argues that Plaintiffs have stated a valid antitrust claim against ABC, as the complaint alleges that ABC has conspired with BoxRec Defendants to monopolize the registering of boxing fights in the United States. (Doc. 44, at 13-14).

"Antitrust standing augments the 'case or controversy' requirement under Article III, but does not affect the subject matter jurisdiction of the court.' Rather, it simply 'prevents a plaintiff from recovering under the antitrust laws.'" *Novak v. Somerset Hosp.*, 625 F. App'x 65, 67 (3d Cir. 2015) (internal citations omitted). To succeed, an antitrust plaintiff must establish both antitrust and Article III standing.

Section 4 of the Clayton Act enables a private plaintiff "who shall be injured in his [or her] business or property by reason of anything forbidden in the antitrust laws" to sue for

treble damages. 15 U.S.C. § 15. "While the statutory language of [Section 4] is broad," the Supreme Court and the Third Circuit have recognized that "plaintiffs must also have 'antitrust standing.'" *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 341 (3d Cir. 2018) (quoting *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 171 (3d Cir. 2015). Antitrust standing differs from Article III constitutional standing in that it is "prudential." *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir.), *cert. denied*, 139 S. Ct. 211 (2018) ("*Phila. Taxi*"); *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013). "It does not affect the subject matter jurisdiction of the court, as Article III standing does, but prevents a plaintiff from recovering under the antitrust laws." *Ethypharm S.A. France*, 707 F.3d at 232.

Antitrust injury, in turn, is a "necessary but insufficient condition of antitrust standing." *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997) (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1166 (3d Cir. 1993)); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4, because a party may have suffered antitrust injury but may not be a proper plaintiff under § 4 for other reasons."). Establishment of an antitrust injury is meant to advance the goals of antitrust law—"protect[ing] *competition*, not *competitors*," *Phila. Taxi*, 886 F.3d at 338 (emphasis is original)—by ensuring "that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010).

To establish antitrust injury, a "plaintiff must do more than show that it would have been better off absent the violation." *West Penn*, 627 F.3d at 101 (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977)). Rather, a plaintiff must prove that it suffered an "injury of the type the antitrust laws were intended to prevent" and that the injury "flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at 489; *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) ("the injury prong requires: (1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful") (internal quotations and citation removed). Plaintiffs bears the burden of this showing. *See Phila. Taxi*, 886 F.3d at 343 ("the plaintiff must prove . . .").

At this early stage, the pleading standard is permissive; indeed, as the Third Circuit has recognized, "[t]he existence of antitrust injury is not typically resolved through motions to dismiss." *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)) (citing *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995). An antitrust plaintiff is only required to "allege facts capable of supporting a finding or inference that the purported anticompetitive conduct produced" the purported harm. *In re Remicade Antitrust Litig.*, 345 F.Supp.3d 566, 577 (E.D. Pa. 2018) (quoting *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-2785, 2017 WL 6524839, at *15 (D. Kan. Dec. 21, 2017)).

ABC claims that Plaintiffs have failed to meet even this low standard in the complaint. ABC moves the Court to dismiss Counts III through VI based largely on the contention that Plaintiffs have advanced only purely conclusory allegations and have not alleged that the actions of ABC have cause any injury. (Doc. 37, at 22-23). In opposition, Mendy argues that

"ABC is engaged in a combination or conspiracy with the BoxRec Defendants to monopolize not only the registering of fights in the Unites States but also to bolster ABC's stranglehold over boxing, all of which affects trade or commerce along the several states and internationally." (Doc. 44, at 13). For the reasons stated below, the undersigned finds that Plaintiffs have not alleged a sufficient antitrust injury to establish its antitrust standing.

To establish an antitrust injury, a plaintiff must allege an injury that is "the type the antitrust laws were intended to prevent." *Brunswick Corp.*, 429 U.S. at 489. This inquiry involves identifying the alleges anticompetitive conduct and determining whether that conduct injured "consumers or [ ] competition in general." *Phila. Taxi*, 886 F.3d at 344, 339 ("[a]llegations of purportedly anticompetitive conduct are meritless if those acts would cause no delirious effect on competition"). To determine whether conduct is anticompetitive, the court must look at the conduct "as a whole rather than considering each aspect in isolation." *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (en banc) (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)); *see also Phila. Taxi*, 886 F.3d at 339. From there, the alleged injury must be "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co.*, 495 U.S. at 334; *West Penn*, 627 F.3d at 101. As such, the court must "examine the casual connection between the purportedly unlawful conduct and the injury" claimed to the market and consumers. *Lifewatch Servs. Inc.* 902 F.3d at 342 (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998)). If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no anti-trust injury, even if the defendant's conduct is illegal *per se*. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

Guided by this benchmark legal standard, the undersigned finds that Plaintiffs have not alleged the type of injury the antitrust laws were designed to prevent, and thus, have failed to satisfy the "antitrust injury" standing requirement. *See Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *11 (M.D. Pa. Aug. 2, 2016). The crux of the complaint alleges that ABC and BoxRec Defendants have conspired with other Defendants to monopolize the registering of boxing fights in the United States. (Doc. 1, ¶¶ 247-257, 370-383, 423-425). Plaintiffs allege that ABC voted to recognize BoxRec as the official record keeper in the sport of boxing and that ABC has engaged in a conspiracy with BoxRec to monopolize the boxing market and "[squeeze] out" other boxing registers and record keepers. (Doc. 1, ¶¶ 280-282). However, Plaintiffs have not alleged that there are any market-wide anticompetitive effects beyond their injury. (Doc. ¶¶ 268-69, 273, 297, 376). The Third Circuit has "consistently held an individual plaintiff personally aggrieved by an alleged anti-competitive agreement has not suffered an antitrust injury unless the activity has a wider impact on the competitive market." *Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001). "Business practices-however unseemly hurtful, or even otherwise unlawful—do not constitute antitrust violations unless they harm, or at least endanger, competition." *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 695-96 (E.D. Pa. 2007). An antitrust injury must "result from a lessening of competition," even if "there may be an agreement which is harming others in the marketplace." *W. Penn Power Co.*, 147 F.3d at 266.

Caselaw in the Third Circuit is replete with examples where plaintiffs failed to establish an antitrust claim when they have only alleged injury to their own welfare. *See e.g. Cable Line, Inc. v. Comcast Cable Commc'ns of Pennsylvania, Inc.*, No. 3:16-CV-1000, 2017 WL 4685359, at *4 (M.D. Pa. Oct. 18, 2017) (concluding plaintiffs failed to plead antitrust standing where

Plaintiffs did not allege any market-wide anticompetitive effects beyond their own injury); *Irish v. Ferguson*, 970 F. Supp. 2d 317, 365 (M.D. Pa. 2013) (concluding plaintiffs failed to establish antitrust standing where they only alleged harm to themselves and not to the market competition); *Pennsylvania v. Nat'l Collegiate Athletic Ass'n*, 948 F. Supp. 2d 416, 434 (M.D. Pa. 2013); *Race Tires Am.*, 614 F.3d at 84. Beyond the conclusory allegations of Plaintiffs' own injuries, the complaint merely states that the alleged unlawful activity of ABC has had harmful effects on competition, interstate commerce, and innovation in the boxing arena. (Doc. 1, ¶¶ 269, 297, 326-344). However, it is evident that Plaintiffs cannot offer specific allegations to establish that the challenged conduct of ABC has an "actual adverse effect on competition as a whole in the relevant market." *Jung*, 2016 WL 5929273, at *11; (citing *Irish*, 970 F. Supp. 2d at 365; *Brunswick Corp.*, 429 U.S. at 488). Indeed, the Court is hard-pressed to find the existence of any injury to competition that could have occurred as a result of Defendant ABC's role in certifying applications to boxing registries as there is no allegation that ABC has not certified or would not certify another entity. (Doc. 1, ¶¶ 154-155). Further, the Court is not required to accept Plaintiffs' conclusory allegations that ABC controlled the inclusion and reporting of boxing events through their many "exclusionary agreements" with BoxRec. (Doc. 1, ¶ 326); *see Gibney v. Fitzgibbon,* 547 F. App'x 111, 113 (3d Cir. 2013) (explaining that liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions"). Without allegations beyond the injuries to Plaintiffs' own welfare, the Court cannot say that Plaintiffs' injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.' " *Pace Elecs., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 120 (3d Cir. 2000); *see Jung*, 2016 WL

5929273, at *11; (concluding dismissal of the complaint is warranted where plaintiff failed to allege the type of injury antitrust law was designed to prevent).

`Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs' claims in Counts III, IV, V, and VI against ABC be DISMISSED.

### 3. Plaintiffs' tortious conduct claims fail.

In Count VIII, Plaintiffs allege that all Defendants, including ABC, committed tortious acts against Plaintiffs. (Doc. 1, ¶¶ 407-16). Plaintiffs allege that Defendants committed tortious acts of discrimination, breach of duty of good faith and fair dealing, breach of fiduciary duties, and/or other intentional that have caused Plaintiffs harm. (Doc. 1, ¶ 411). In addition, Plaintiffs allege that "[a]s a proximate result of the tortious conduct of Defendants, and the Defendants' Breach of Fiduciary Duty, Plaintiff Habazin suffered loss of reputation, shame, mortification, emotional distress, and injury to her feelings, in a sum according to proof at the time of trial." (Doc. 1, ¶ 415). Plaintiffs do not identify any federal statutes under which they seek relief. (Doc. 1, ¶¶ 407-16).

Plaintiffs seem to assert a claim for breach of the fiduciary relationship between Plaintiffs and Defendants. (Doc. 1, ¶ 409) ("In committing the acts herein alleged, the aforesaid Defendants, and each of them did so negligently, carelessly, and recklessly perform their duties, and should have known that Defendants would breach their fiduciary duties to Plaintiffs."). Pennsylvania has adopted the Restatement (Second) of Agency view of breach of fiduciary duty. See *Reading Radio, Inc. v. Fink*, 833 A.2d 199 (Pa. Super. Ct. 2003). "A person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation . . . Fiduciary relations include not only the relation of trustee and beneficiary, but also, among others, those of guardian and ward, agent and principal,

- 23 -

attorney and client." Restatement (Second) of Trusts § 2 cmt. b (1959). "[A] confidential relationship between two parties can give rise to fiduciary duties owed by one to the other." *PTSI, Inc. v. Haley,* 71 A.3d 304, 311 (2013); *see also Vicky M. v. Northeastern Educational Intermediate Unit 19,* 486 F.Supp.2d 437, 459 (M.D. Pa. 2007) (citing *In re Estate of Clark,* 359 A.2d 777, 781 (1976)* (a fiduciary relationship exists when parties do not deal with each other on equal terms, "either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other")).

Plaintiffs have not pled sufficient facts to plausibly state the existence of a fiduciary relationship between them and Defendants at this stage of litigation. ABC moves to dismiss Count VIII of the complaint, arguing that there is not claim for "tortious conduct" under Pennsylvania law and that ABC does not have any "special relationship" with Plaintiffs to support a claim for breach of fiduciary duty. (Doc. 37, at 36-37). In response, Mendy argues that "Plaintiffs do state that ABC acted in various manners that amounted to willful tort and/or negligence," and that this is an issue of law for the Court to decide. (Doc. 44, at 14). The undersigned finds that there is no basis upon which to base a duty springing from Defendants to Plaintiffs because the complaint is devoid of any averments to establish that Defendants had any "special relationship" with Plaintiffs.

Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs' claim in Count VIII against all Defendants be DISMISSED.

### 4. Plaintiffs' racial discrimination claim fails.

In Count XI of the complaint, Plaintiffs assert a claim for racial discrimination against ABC and BoxRec Defendants. (Doc. 1, ¶¶ 426-36). Plaintiffs assert that Mendy and Dene are "black and of African origin," and that the actions of Defendants constitute discrimination

because "[t]here is no other explanation for several of Entity Defendants' action other than race and national origin discrimination." (Doc. 1, ¶¶ 428-30). Plaintiffs assert, without provide a basis for the assertion, that "ABC's own guidelines mandate the reporting of results for all fighters except Africans." (Doc. 1, ¶ 431). Plaintiffs do not identify any federal statutes under which they seek relief. (Doc. 1, ¶¶ 426-36).

ABC argues the racial discrimination count fails because ABC only has jurisdiction over boxing matches held in the United States. (Doc. 37, at 38). In opposition, Mendy asserts that he is a member of two protected classes—Black and foreign origin-African—and claims that Defendants' alleged actions, such as failing to report the results of various boxing matches organized by Mendy, were on account of his race. (Doc. 44, at 14-15). Mendy claims that ABC, by its own actions and entrenched guidelines, shows a discriminatory propensity towards Africans. (Doc. 44, at 14-15).

As ABC correctly notes, Plaintiffs fail to assert under which laws they seek to bring their claim. (Doc. 1, at 73-74). Liberally construing the *pro se* complaint, the undersigned finds there is no federal statutory basis for Plaintiffs' discrimination claims as this case does not arise in an employment, educational, or public accommodation context, as required to assert a Title VII and a § 1981 claim. In relevant part, the substantive elements of a claim under Title VII and § 1981 are generally identical. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). To survive a motion to dismiss on a § 1981 claim, the plaintiff must plausibly allege that (1) he is a member of a protected class; (2) he is qualified for the position or satisfactorily performed the duties required by her position; and (3) he suffered an adverse employment action. *Jones v. E. Airlines, LLC*, No. 20-CV-1927, 2021 WL 2456650, at *7 (E.D. Pa. June 16, 2021) (citing *Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144-145 (3d Cir. 2007)).

Likewise, Title VII's burden-shifting framework requires a plaintiff demonstrate that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) under circumstances that give rise to an inference of unlawful race-based discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). As discussed above, the undersigned finds that Plaintiffs have not pleaded facts demonstrating an employment relationship between themselves and ABC or BoxRec. Any attempt to bring a racial discrimination claim pursuant to Title VII or § 1981 fails. *See Bailey v. Millenium Grp. of Delaware*, No. 21-1752, 2022 WL 3754617, at *2 (3d Cir. Aug. 30, 2022) (concluding that a plaintiff alleging employment discrimination under Title VII must demonstrate that an employment relationship existed) (citing *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710, F.3d 114 (3d Cir. 2013)).

Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs' claim of racial discrimination against all Defendants be DISMISSED.

### 5.  Plaintiffs' civil conspiracy claim fails.

In Count XII of the complaint, Plaintiffs bring a claim for "civil conspiracy" against all of the Defendants. (Doc. 1, ¶¶ 423-25). Plaintiffs allege "Defendants named and their associates conspired and continue to conspire with each other and others against Plaintiffs as alleged herein and above including, but not limited to depriving Plaintiffs of their civil rights, contractual rights, and other rights." (Doc. 1, ¶ 424).

In Pennsylvania, in order to state a cause of action for civil conspiracy, a plaintiff is required to allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citing *McGuire v.*

*Shubert,* 722 A.2d 1087, 1092 (Pa. Super. 1998)). Further, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman*, 751 A.2d at 660 (citing *Pelagatti v. Cohen,* 536 A.2d 1337, 1342 (1987)). "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008) (citation omitted). Plaintiffs fail to support their claim with facts establishing each element of conspiracy, including any facts alleging an overt act in furtherance of the alleged conspiracy by any of the Defendants. (Doc. 1); *see McKeeman*, 751 A.2d at 660.

Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs' civil conspiracy claims against all Defendants be DISMISSED.

### 6.  Plaintiffs' RICO claim fails.

In Count XII of the complaint, Plaintiffs assert several RICO claims. (Doc. 1, ¶¶ 516-537). Plaintiffs allege that the actions of ABC and its board members and officers "in running the ABC as their personal fiefdoms, skimming money from it, selecting BoxRec as exclusive Boxing Register to the exclusion of Fight Fax and other more qualified boxing registers, constitute predicate acts and on belief and information otherwise qualify the ABC as an *enterprise* under the RICO Act." (Doc. 1, ¶ 515) (emphasis in original). More specifically, Plaintiffs assert the following claims against all Defendants, including ABC: (1) conduct and participation in an enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c); (2) acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(b); and (3) conspiracy to engage in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(d). (Doc. 1, ¶¶ 516-537).

ABC Defendants move to dismiss Plaintiffs' RICO claims arguing that Plaintiffs: (1) are not entitled to a civil remedy under RICO because the complaint does not allege any violations of criminal prohibitions; (2) have not plausibly alleged injuries proximately caused by alleged racketeering activity; (3) have not plausibly alleged two predicate acts by ABC; (4) have not plausibly alleged a RICO enterprise; and (5) have not plausibly alleged a RICO conspiracy. (Doc. 37, at 30-35). In opposition, Mendy argues he has standing to bring a RICO claim because his alleged damages are directly related to the alleged RICO violations, and he has suffered significant injury to his boxing business as he has been excluded from the UAE market. (Doc. 44, at 15). Mendy further argues that his complaint alleges ABC participated in a conspiracy with BoxRec Defendants that violated RICO. (Doc. 44, at 16-17).

"RICO is a remedial statute which is to be liberally construed to effectuate its purposes." *United States v. Mazzio*, 501 F. Supp. 340, 342 (E.D. Pa. 1980) (citing *United States v. Forsythe*, 560 F.2d 1127, 1135-36 (3d Cir. 1977); *United States v. Provenzano*, 620 F.2d 985, 993 (3d Cir. 1980)). The RICO Act "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]." 18 U.S.C. § 1962(d). The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). "In order to have standing to litigate a civil RICO claim, a plaintiff must

show that [he] suffered an injury to [his] business or property and that the injury was proximately caused by the defendant's racketeering activities." *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (per curiam). "[I]n construing the federal RICO law, [the Third] Circuit has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 492 (3d Cir. 2000)). Furthermore, RICO does not provide a cause of action where the damages alleged are "speculative." *Maio*, 221 F.3d at 495 (speculative damages that were "predicated exclusively on the *possibility* that future events might occur" could not be from the basis of a RICO injury).

Nothing in the complaint provides a plausible basis for concluding that Plaintiffs suffered a non-speculative injury to business or property that would give them standing to raise a RICO claim. Plaintiffs assert that they have been harmed as a result of ABC's alleged activity. (Doc. 1, ¶ 460). Specifically, Plaintiffs allege that they have suffered a loss of their reputation, shame, mortification, emotional distress, and injury to their feelings. (Doc. 1, ¶ 405). Plaintiffs also allege that ABC' actions have resulted in a "smear campaign" against Plaintiffs. (Doc. 1, ¶¶ 238, 415). To the extent that Plaintiffs seek compensation for personal injuries, these are not injuries to "business or property" for purposes of RICO. *See Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff," and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest"). Physical or emotional harm to a person is insufficient to show that a person was injured in his business or property under the act. *Parness v. Essex Cty. Corr. Facility*, Civ. A. No.

15-2397, 2016 WL 1643773, at *4 (D.N.J. Apr. 25, 2016) (citing *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007)). "Similarly, losses which flow from personal injuries are not [damage to] property under RICO." *Magnum*, 253 F. App'x at 229.

Further, the Court need not credit Plaintiffs' conclusory allegations that they suffered harm to business or property absent factual support for those allegations. (Doc. 1, ¶¶ 238-39, 415, 460); *Kovalev v. Stepansky*, No. CV 19-5579, 2020 WL 553843, at *3 (E.D. Pa. Feb. 4, 2020), *aff'd as modified*, 835 F. App'x 678 (3d Cir. 2020). To the extent that Mendy asserts that he suffered financial loss because the events he promoted were not recorded, the Third Circuit has explained an injury to business or property requires "a concrete financial loss and not mere injury to a valuable intangible property interest." (Doc. 1, ¶¶ 237-239); *Maio*, 221 F.3d at 483; *see Interfaith Cmty. Org. v. Honeywell Int'l*, 399 F.3d 248, 254 (3d Cir. 2005) (explaining that in order to have standing, a plaintiff must first demonstrate with particularity that she has suffered a concrete injury-in-fact); *cf. Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999) ("Courts assess whether a party has established injury-in-fact, causation, and redressability by considering whether the alleged injury falls within the 'zone of interests' that the statute or constitutional provision at issue was designed to protect . . . ."). The injury alleged must "be an ascertainable out-of-pocket loss." *FL Receivables Trust v. Bagga*, Civ. A. No. 03–5108, 2005 WL 563535, at *3 (E.D. Pa. March 8, 2005) (citing *Maio*, 221 F.3d at 483–84); *see also Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (finding that injury to business or property requirement may be satisfied by allegations of actual monetary loss, i.e., an out-of-pocket loss). Equally important, "an injury that is speculative or contingent on future events does not confer RICO standing." *FL Receivables Trust*, 2005 WL 563535, at *4 (citing *Maio*, 221 F.3d at 495). Additionally, Plaintiffs' failure

to allege such an injury to business or property is also fatal to their RICO conspiracy claims under § 1962(d). *See Magnum*, 253 F. App'x at 229 ("A plaintiff alleging a civil RICO violation under *either* § 1962(c) or (d) must plead a cognizable injury to 'business or property' under § 1964(c).").

Accordingly, it is recommended that ABC's motion to dismiss be GRANTED and Plaintiffs' RICO claims against ABC be DISMISSED for failure to state a claim upon which relief may be granted. *See Jannuzzio v. Danby, No.* 22-CV-01189, 2022 WL 2541678, at *11 (E.D. Pa. July 7, 2022) (concluding plaintiffs failed to plead sufficient facts to confer individual standing with respect to their RICO claims where plaintiffs failed to plead any facts that show a concrete injury to their individual business or property); *Kovalev*, 2020 WL 553843, at *3; *Parness,* 2016 WL 1643773, at *5 (citing *Amos v. Franklin Fin. Servs. Corp.,* 509 F. App'x 165, 167 (3d Cir. 2013)); *see also Magnum*, 253 F. App'x. at 227.

## IV.   LEAVE TO AMEND

Notwithstanding the aforementioned jurisdictional deficiencies, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *Grayson*, 293 F.3d at 108. The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). The undersigned does not find that leave to amend is warranted in this case, as amendment would be futile.

## V.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that:

1.  BoxRec Defendants' motion to dismiss (Doc. 28) be **GRANTED**, and all claims against BoxRec Defendants be **DISMISSED** for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2);

2.  ABC's motion to dismiss (Doc. 30) be **GRANTED**; and

3.  Mendy's motion to strike (Doc. 25) and motion for extension of time (Doc. 36) be **DENIED as MOOT**; and

**BY THE COURT:**

Dated: August 24, 2023

_s/ Karoline Mehalchick_
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD BISSAU MENDY, et al.,

               Plaintiffs,

    v.

BOXREC, et al.,

               Defendants.

CIVIL ACTION NO. 1:22-CV-00535

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 24, 2023**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations, or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only at his or her discretion or where required by law and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: August 24, 2023**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**